CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2016 FEB -5  PM 3: 52

DEPUTY CLERK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHONDA JOAN MATTHEWS,  §  | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No.  4:15-CV-169-O-BL | |
| § | | |
| § | | |
| CAROLYN W. COLVIN, § | | |
| Acting Commissioner of Social Security, § | | |
| § | | |
| Defendant. § | Referred to U.S. Magistrate Judge | |

### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shonda Joan Matthews ("Matthews") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be affirmed.

### I.   BACKGROUND

Matthews claims that she became disabled on July 28, 2010, due to multiple sclerosis, cognitive disability related to multiple sclerosis, and cognitive dysfunction. (Tr. 187, 190). Matthews filed an application for DIB on May 25, 2011. (Tr. 97). Matthews's application was initially denied on August 18, 2011, and on reconsideration on November 28, 2011. (Tr. 102, 107). Subsequently, Matthews requested and received a hearing before Administrative Law Judge Gilbert Rodriguez ("ALJ") on April 8, 2013. (Tr. 28). On August 20, 2013, the ALJ issued

an unfavorable decision finding that Matthews was not disabled and was capable of performing her past relevant work. (Tr. 25-41).

The ALJ followed the sequential five-step analysis to arrive at this decision.[1] First, the ALJ determined that Matthews had not engaged in substantial gainful activity since the date of her alleged onset of disability, July 28, 2010. (Tr. 30). Next, the ALJ determined that Matthews suffered from the following severe impairments: multiple sclerosis, cervicalgia, and lumbago. (Tr. 31). Third, the ALJ surmised that Matthews's severe impairments did not equal the severity of the impairments in the listings.[2] (Tr. 31). Next, the ALJ determined that Matthews had the residual functional capacity ("RFC") to perform light work activity, meaning that she can lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. 32). Also, the ALJ determined that Matthews can sit, stand, or walk for about six hours in an eight-hour workday; that she is unlimited in her pushing and pulling abilities; and that she has no postural, manipulative, communicative, visual, or environmental limitations. (Tr. 32). The ALJ found that Matthews does not have a severe mental impairment. (Tr. 32). Next, the ALJ concluded that Matthews could return to her past relevant work as an administrative assistant, accounts receivable clerk, or cost accounting clerk. (Tr. 39). Finally, the ALJ determined that Matthews was not disabled within the meaning of the Social Security Act. (Tr. 40).

The Appeals Council denied review on January 14, 2015. (Tr. 1). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[2] *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

## II. LEGAL STANDARD

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716,

718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### III. ANALYSIS

Matthews raises four issues on appeal: (1) whether the ALJ properly weighed the opinion of Matthews's treating physicians, (2) whether the ALJ erred in evaluating Matthews's credibility, (3) whether substantial evidence supports the ALJ's step three finding, and (4) whether the Appeals Council properly considered Matthews's request for review. (Doc. 13).[3]

#### A. The ALJ properly evaluated the medical evidence.

In considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination on the claimant), or non-examining sources (a physician who reviews only the claimant's paper record). *See generally* 20 C.F.R. §§ 404.1502,

---

[3] Matthews's briefs label the nature of her claims differently, but the Court will address the underlying substance of her claims and not the titles of the issues.

416.902. Courts in this circuit "have long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Even "[t]he treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status." *Greenspan*, 38 F.3d at 237; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

When good cause is shown, an ALJ may assign little weight or even no weight to a treating source opinion. *Greenspan*, 38 F.3d at 237. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. The regulations list factors which "an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to controlling weight." *Id.* The analysis should include: (1) the physician's length of treatment of the claimant, (2) the nature and extent of the treatment relationship, (3) the support of the physician's opinion afforded by the medical evidence of record, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the treating physician, and (6) other factors. 20 C.F.R. § 404.1527(c)(2).

Even so, courts in the Northern District of Texas have held that "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The ALJ need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3

(N.D. Tex. April 23, 2010) (emphasis added).[4] Furthermore, following *Newton*, the Fifth Circuit explicitly clarified that the holding in that case applied only to the limited situation where "the ALJ rejects the sole relevant treating or examining medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Consequently, when the record contains competing opinions among examining physicians, the ALJ is not required to analyze the criteria set forth in 20 C.F.R. § 404.1527(c)(2) before declining to give great weight to a treating physician's opinion. *Id.* at 467; *Lopez v. Astrue*, 854 F. Supp. 2d 415, 423 (N.D. Tex. 2012); *Nicaragua v. Colvin*, No. 3:12-CV-2109-G BN, 2013 WL 4647698, at *4 (N.D. Tex. Aug. 29, 2013). The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Also, the ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56.

In this case, Matthews argues that the ALJ did not properly weigh the opinions of Matthews's treating physician, Dr. Kiran Shah, or her treating chiropractor, Dr. Karl Foster. (Doc. 13, p. 4-5). The Commissioner responds that the ALJ did properly weigh, and ultimately discount, Dr. Foster's opinion and that Dr. Shah's own medical observations contradicted his medical opinion that Matthews was disabled. (Doc. 14. P. 10-16). The ALJ concluded that Dr. Foster, as a chiropractor, is not an acceptable medical source and that "no substantive bases are given for his conclusions" that Matthews is limited to sedentary-level exertion. (Tr. 32-33). The

---

[4] *See also Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008).

ALJ found that Dr. Shah's letter to Liberty Mutual Insurance regarding a long-term disability insurance evaluation was inconsistent with Dr. Shah's treatment records as a whole. (Tr. 33).

### i. The ALJ properly weighed Dr. Foster's opinion.

The Social Security Administration classifies medical sources into two categories, "acceptable medical sources" and other medical sources. 20 C.F.R. §§ 404.1513, 416.913. "Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, *give medical opinions*, and be *considered treating sources whose medical opinions may be entitled to controlling weight.*" *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009) (emphasis added); SSR 06-03p (2006). "Acceptable medical sources" include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. *Id.* "Other medical sources" can include nurse practitioners, physicians' assistants, chiropractors, audiologists, and therapists. *Id.* Hence, a chiropractor, not being an acceptable medical source, cannot render a medical opinion relevant to a Social Security disability appeal. *See Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) (finding that an ALJ is not required to rely on a chiropractor's evaluation in making an RFC finding because a chiropractor is not an acceptable medical source); *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) . . . ."). Thus, despite Matthews's claims, the ALJ was not required to afford any weight to Dr. Foster's assessment. *See Thibodeaux*, 324 F. App'x at 445.

Nevertheless, the findings of other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p. In Matthews's case, the ALJ evaluated Dr. Foster's

conclusions and found them to be inconsistent and not well-supported, as required by SSR 96-2p. (Tr. 38). Also, the ALJ noted that Dr. Foster never recommended or placed Matthews in a hospital or "highly supported living environment due to the severity of [Matthews's] impairments according to his findings." (Tr. 38). The ALJ explained that Dr. Foster's disability form, submitted to Liberty Mutual Insurance, is conclusory and unsupported by diagnostic evidence. (Tr. 38, 343). Finally, the ALJ avers that Dr. Foster's disability determination infringes upon a matter solely reserved for the ALJ, the duty to determine Matthews's RFC. (Tr. 38). As such, the ALJ—noting that Dr. Foster was not an acceptable medical source—afforded his conclusions "only the weight merited by the overall evidence . . . in conjunction with the total evidence in this case and other relevant factors as provided in the regulations." (Tr. 38).

Essentially, Matthews argues for the acceptance of Dr. Foster's assessment, by an *other* medical source, over the contradicting medical opinions of Drs. Samaratunga and Durfor, *acceptable* medical sources. (Doc. 13, p. 4). Dr. Foster found that Matthews can perform sedentary "desk-type work only with very little walking since she trips and falls frequently due to [multiple sclerosis]." (Tr. 343). On the contrary, both Drs. Samaratunga and Durfor found that Matthews could perform light work and that she could sit or stand for about six hours in an eight-hour workday with normal breaks. (Tr. 392, 419). The ALJ noted the findings of Drs. Samaratunga and Durfor, although not by name, concluding that Matthews could perform light work activity without limitations. (Tr. 18).

Because the ALJ found Dr. Foster's opinion to be conclusory and unsupported by diagnostic evidence, the Court finds that the ALJ properly articulated good cause to reject Dr. Foster's opinion that Matthews could only perform sedentary work. *See Newton*, 209 F.3d at 456.

### ii. The ALJ properly weighed Dr. Shah's medical opinion.

Generally, an ALJ is required to assess the factors found in 20 C.F.R. § 404.1527(c)(2) in his dismissal of a treating physician's opinion. *Newton*, 209 F.3d at 456. However, in this case, Matthews's quarrel with the ALJ's failure to give weight to Dr. Shah's "unqualified opinion" is unfounded. Matthews mistakenly contends that Dr. Shah opined as follows:

> Mathews [cannot] use her hands without dropping things, . . . She cannot even hold paperclips. . . . Ribs feel that they are out of alignment and joints keep locking up and cannot pick up things. They freeze and it takes forever to come back. Ankles have become red over the weekend . . . She drops things. Typing and writing are hard. She cannot cook or carry sharp object. She has numbness. She has a headache after injection.

(Doc. 13, p. 4). In reality, these quotes are taken from the "Present Illness" sections of Dr. Shah's records and they clearly reflect Matthews's subjective complaints, not Dr. Shah's medical opinions. (Tr. 381-382). Instead, Dr. Shah's opinions are documented in the "Impression" sections of the same documents which list his medical diagnoses of Matthews's conditions. (Tr. 381-382). Taken out of context, as Matthews presented, it could seem as if these were Dr. Shah's opinions. However, when listed in complete form it is obvious that Dr. Shah was simply documenting Matthews's comments. For further clarification, the relevant "Present Illness" sections of Dr. Shah's records are detailed in their entirety below:

> She is here for evaluation and management of Multiple Sclerosis. She cannot use hands without dropping things. She cannot even hold paper clips. She went to give her son a pencil [sic]. Ribs feel that are out of alignment. She went to Chiropractic. She cannot sleep and is uncomfortable. She tried to go to park and pull over monkey bars. She has high stress. [Tr. 387].

> She is here for evaluation and management of Multiple Sclerosis. Midrin was not helping for Headaches. Hand numbness is back in full force. Hand joints keep locking up and cannot pick up things. They freeze and it takes forever to come back. Ankles have become red over weekend. [Tr. 389].

9

> She is here for evaluation and management of Multiple Sclerosis. She is okay. She is good some days and other days are not so good. Hands are tingly and gets cold easily. She feels tired. She fell while going upstairs. She scuffed her knee a little bit. Sometimes, she goes to her room and forgets what she went there for. She goes back and has to jog her memory. Vision is okay. Bladder is same, sometimes, she cannot go. No paralysis. Depression medications has not helped. Denies other neurologic or constitutional symptoms. [Tr. 437].

The Court is certain that Dr. Shah's medical opinions do not include such information as Matthews's foray onto the "monkey bars," terms like "locking up" or "freeze," or the fact that Matthews "scuffed her knee a little bit." Instead, these entries are indicative of Matthews's reports to Dr. Shah about her present feelings regarding her condition; this fact is evident by Dr. Shah's note that Matthews "[d]enies other neurologic or constitutional symptoms."

In comparison, the "Impression" sections of Dr. Shah's records list his medical diagnoses of Matthews's conditions. Those sections contain ailments such as: multiple sclerosis, musculoskeletal system problems, paresthesia, ataxia, sensorineural hearing loss, "current some day smoker," depression, and vitamin B12 deficiency. (Tr. 387, 389). More importantly, the "Examination" sections of those records indicate that Matthews's motor functions were normal for bulk, tone, and strength. Also, Dr. Shah noted that Matthews's sensory perception was normal for light touch, pin prick, position, vibration, and temperature. Dr. Shah added that Matthews had an unsteady gait and some difficulty walking on her tip toes, heels, and tandem. (Tr. 387, 389). The ALJ evaluated all of this information and appeared to lend credence to Dr. Shah's medical records detailing these findings. (Tr. 32-33). However, the ALJ did take issue with a letter from Liberty Mutual Insurance to Dr. Shah recounting an earlier conversation between a Liberty Mutual representative and Dr. Shah. (Tr. 33). Specifically, the ALJ noted that the letter proclaimed Dr. Shah's opinion that Matthews lacked all capacity to work, but in the

same letter Dr. Shah was understood to opine that Matthews had "remained stable" and that her ability to drive was not restricted. Further, Dr. Shah did not refer Matthews for psychiatric treatment, rehabilitation services, or change her multiple sclerosis therapy. (Tr. 33, 428).

A review of the ALJ's opinion in conjunction with the evidence on record reveals that the ALJ did not reject Dr. Shah's medical opinion. On the contrary, the ALJ cited Dr. Shah's records when documenting the progression of Matthews's treatment. (Tr. 32-33). As such, the ALJ was not requited to undertake an detailed analysis of the § 404.1527(c)(2) factors. *See Qualls*, 339 F. App'x at 467. The ALJ thoroughly explained his reasons for discounting the letter from Liberty Mutual Insurance to Dr. Shah. Further, the ALJ's findings and determinations are consistent with the evidence on record. Accordingly, the Court finds that the ALJ applied the proper legal standard when assessing Dr. Shah's medical opinions. *See Waters*, 276 F.3d at 718.

### B. The ALJ properly assessed Matthews's credibility.[5]

Next, Matthews takes issue with the ALJ's discussion of her daily activities and her ability to perform routine tasks. Specifically, Matthews contends that the ALJ inaccurately reported Matthews's testimony regarding taking her children to school and picking them up on occasion. Matthews cites the section of the ALJ's report where he writes, "She stated that she takes them to school every once in a while and picks them up after school if she does not have a doctor's appointment." (Doc. 13, p. 6; Tr. 35). Matthews argues that "the testimony was that she does not take them to school, but that they go by bus. She stated that she only picked them up at school if the children had a doctor's appointment." (Doc. 6, p. 13). The Commissioner avers that the ALJ's statement accurately reflects the hearing testimony. The hearing transcript reads as follows:

---

[5] Matthews labels this issue, "The [ALJ] has failed to correctly report the actual testimony presented at the hearing," although the substance of this issue seems to be Matthews's argument that the ALJ did not conduct a proper credibility analysis. (Doc. 13, p. 6). The Court will construe the issue as such.

> ALJ:        Do you ever take them to school?
>
> Matthews:   Every now and then. Not often. They ride the bus.
>
> ALJ:        Do they ride the bus?
>
> Matthews:   Um-hum.
>
> ALJ:        Well, do you ever pick them up?
>
> Matthews:   Only if they have a doctor's appointment.

(Tr. 62-63). The ALJ did misstate Matthews's testimony that she picks her children up unless she has a doctor's appointment. In fact, Matthews testified that she does not pick her children up unless they have a doctor's appointment. Even so, this misstatement is not essential to the ALJ's credibility determination. The ALJ specifically indicated that his credibility determination was based on Matthews's complaints of pain or fatigue. (Tr. 36-37). The ALJ's discussion about Matthews's daily activities is an appropriate component of this credibility analysis. *See* 20 C.F.R. § 416.929(c)(3); *see also Leggett*, 67 F.3d at 565 n.12 ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status.").

When a claimant alleges symptoms such as pain or fatigue, the ALJ must conduct an objective/subjective, two-step analysis to evaluate the symptoms. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008); SSR 96-7p, 1996 SSR LEXIS 4. During the first, objective step, the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Salgado* at 458. When an impairment described in step one is established, then the ALJ proceeds through the second, subjective step to assess "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to

do basic work activities." *Id.* at 459. As part of the second step, the ALJ must make a finding regarding the credibility of the claimant's testimony regarding their symptoms. *Id.*

The Fifth Circuit explicitly rejected the requirement that an "ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Rather, the ALJ is simply bound to generally state his reasons for rejecting a claimant's complaints. *Id.* at 164. Both SSR 96-7p and 20 C.F.R § 416.929(c)(3) set out a seven-factor analysis for an ALJ to apply in order to assess the credibility of a claimant's subjective allegations of pain or fatigue. These factors include:

> (1) your daily activities; (2) the location, duration, frequency, and intensity of your pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). Although the ALJ must articulate the basis for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Finally, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam). "Moreover, a factfinder's evaluation of the credibility of subjective

complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

For the objective part of the two-step analysis, the ALJ determined that Matthews did indeed have multiple sclerosis, cervicalgia, and lumbago. (Tr. 31). Next, for the subjective part of the analysis, the ALJ is required to make a determination as to the extent and credibility of the claimant's symptoms. In Matthews's case, the ALJ acknowledged his awareness of this required, two-step analysis and completed the necessary steps, albeit not in narrative form. (Tr. 36). The ALJ did not follow a mechanical analysis of the seven factors identified above, but his decision did contain the following paragraph:

> I have considered the claimant's allegations of severe and disabling impairment related symptoms and other subjective complaints. Individual symptoms, including pain, will be determined to diminish the person's capacity for basic work activity, but only to the extent that the individual's alleged functional limitations and restrictions due to claimant's symptoms can reasonably be accepted as consistent with the medical findings and other evidence of record. *Upon consideration of the record as a whole, and when evaluated within the guidelines of SSR 96-6p and regulations 404.1529 and/or 416.929*, the claimant's and/or others' allegations are found unsupported by the preponderance of the objective medical findings, which fail to establish significant or advanced physical or mental pathology, *by conserved daily activities and functioning, by demeanor throughout the record, by statements and assessments from examining and evaluating sources, and by other evidence of record (SSR 96-7p, regulation 404.1529, 416.929)*. Thus, I cannot find the claimant's and/or others' allegations credible, nor to result in limitations additional to the ones stated.

(Tr. 37) (emphasis added). It is a sufficient credibility analysis "when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince*, 418 F. Supp. 2d at 871. Moreover, an ALJ conducts a sufficient credibility analysis by indicating that he considered the claimant's "subjective complaints in compliance with 20 C.F.R. § 404.1529" and SSR 96-7p, as well as the entire record, including the claimant's "testimony and the information

14

and observations of [claimant's] treating physicians and others." *Lopez v. Astrue*, 854 F. Supp. 2d 415, 424 (N.D. Tex. 2012). In this case, the ALJ indicated that he considered the record as whole under the SSR 96-6p, 96-7p, 404.1579, and 416.929. (Tr. 37). Also, the ALJ expressly relied on the assessments from Matthews's physicians, both examining and evaluating.

Accordingly, the Court finds that the ALJ conducted a proper credibility analysis by weighing both the objective and subjective evidence in Matthews's case. *See Prince*, 418 F. Supp. 2d at 871; *see also* 20 C.F.R. § 416.929(c)(3). Accordingly, the Court finds no error in the ALJ's credibility determination.[6]

### C. The ALJ properly conducted the Step Three evaluation.

Next, Matthews avers that the ALJ conducted a faulty analysis at step three of the sequential evaluation process by failing to consider her multiple sclerosis diagnosis under the proper listing. (Doc. 13, p. 3-4). Step three requires an ALJ to determine whether a claimant's impairments, either alone or in combination, meet or equal one or more of the "Listings" as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Audler v. Astrue*, 501 F.3d 445, 448 (5th Cir. 2007). Disability is conclusively presumed if a claimant meets or equals one or more of these listings. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); 20 C.F.R. § 416.920(d). If the claimant fails to meet one or more of the listings, the evaluation proceeds to the fourth and fifth steps. *Loza*, 219 F.3d at 390.

The claimant bears the burden at this step to prove, with medical evidence, that *all* the criteria of the listings are met. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "An impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment." S.S.R. 83-19,

---

[6] Matthews also raises as part of this issue the fact that her husband and mother-in-law were not allowed to testify on her behalf at the administrative hearing. (Doc. 13, p. 7). However, the ALJ does acknowledge reviewing written affidavits from both persons in his decision. (Tr. 33-34).

1983 WL 31248 at *2 (Jan. 1, 1983). Disability will not be found based on a diagnosis alone. *Id.* In order to "equal" a listed impairment, "the set of symptoms, signs, and laboratory findings in the medical evidence supporting a claim must be compared with the set of symptoms, signs, and laboratory findings specified for the listed impairment most like the individual's impairment(s)." *Id.* To judge the "equivalence" of a claimant's impairment(s), the medical findings must be "at least equivalent in severity to the set of medical findings for the listed impairment." *Id.* "In no instance will symptoms alone justify a finding of equivalence." *Id.* at 3. Thus, for a claimant to show that she "equals" a listed impairment, she "must present medical findings equal in severity to *all* the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original); 20 C.F.R. § 416.926(a).

Here, the ALJ considered whether Matthews's impairments met or equaled one or more of the listings. (Tr. 32). The ALJ did not specifically enumerate which listings that he considered, but he did indicate that he "considered the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulations." Further, the ALJ determined that Matthews's impairments "did not singularly or in combination meet or medically equal the required criteria for any of the listed impairments. The evidence of record does not contain an opinion or medical evidence supporting a finding that the claimant's condition is of listing level severity." (Tr. 32).

Matthews argues that her condition meets Social Security listings 11.09A, 11.04B, and 11.09C due to serious interference with motor function in her upper and lower extremities as well as weakness and fatigue in her fingers and hands. (Doc. 13, p. 3). The Court is of the opinion that the ALJ considered these listings as declared by his statement above. Even so, the Court reviewed Matthews's medical records and determined that the ALJ's decision is supported by substantial evidence. Specifically, Matthews avers that Dr. Shah's "unqualified opinion"

supports the fact that she has persistent disorganization in two or more limbs and chronic fatigue, as required by 11.09A, 11.04B, and 11.00C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. However, Matthews again relies on her own subjective complaints found in the "Present Illness" sections of Dr. Shah's notes to supports her contentions. (Doc. 13, p. 4). As discussed above, these notes are not Dr. Shah's medical findings. Rather, Dr. Shah's examination results indicate that Matthews's motor function was normal for bulk, tone, and strength on May 6, 2011; August 8, 2011; and February 10, 2012. (Tr. 387, 389, 437). Additionally, Dr. Shah found that Matthews had normal sensory perception for light touch and temperature on each of those days. (Tr. 387, 389, 437). Regarding Matthews's balance and coordination (cerebellar functions), Dr. Shah recorded normal results for finger to nose and heel to shin (or heel to knee) tests on the same exam dates. (Tr. 387, 389, 437). This is critical because the ALJ indicated that he considered Matthews's medical records and determined that she did not meet the listings associated with multiple sclerosis. (Tr. 32).[7]

Accordingly, the Court finds that substantial evidence supports the ALJ's determination that Matthews's impairments did not meet or equal the listings. *See Newton*, 209 F.3d at 452; 42 U.S.C. § 405(g).

---

[7] 11.09 Multiple sclerosis. With:
A. *Disorganization of motor function* as described in 11.04B; or
C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, *demonstrated on physical examination*, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

11.04B. *Significant and persistent disorganization of motor function* in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

11.00C. Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and *sensory disturbances* (any or all of which may be due to cerebral, *cerebellar*, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added).

**D. The Appeals Council did not improperly deny review in Matthews's case.**

Matthews alleges that the Appeals Council wrongfully refused to consider a letter by Dr. Shah in denying review of her appeal. (Doc. 13, p. 12). Specifically, Matthews takes issue with the Appeals Council's determination that Dr. Shah's letter amounted to "new evidence" that did not pertain to Matthews's condition between the dates of her alleged onset of disability and the ALJ's decision. (Doc. 13, p. 12-13).

"New evidence may be grounds for remand if it is material." *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003). "Evidence is 'material' if: (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination." *Moore v. Astrue*, No. 3-07-CV-2017B, 2009 WL 5386134, at *3 (N.D. Tex. Nov. 13, 2009), *adopted by*, 2010 WL 165992 (N.D. Tex. Jan. 13, 2010). "If new evidence is presented while the case is pending review by the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are still supported by substantial evidence." *Moore*, 2009 WL 5386134, at *3 (citing *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82, 2006 WL 166284 at *2 (5th Cir. 2006)).

Matthews writes, "The Appeal Council erred in that the November 2013 letter was not new evidence *but simply Dr. Shah's summarization of his previous treatment of Matthews from 2010 until 2013 in letter form.*" (Doc. 13, p. 13) (emphasis added). The Court disagrees; the letter from Dr. Shah, dated November 14, 2013, is new evidence. Despite much of the letter being devoted to examinations prior to Matthews's alleged onset of disability, the Appeals Council was incorrect in its finding that Dr. Shah's letter did not pertain, at least in part, to the relevant time period of Matthews's disability application. Even still, the Court finds that Dr.

18

Shah's letter is "immaterial" because it is merely cumulative of evidence already considered by the ALJ. *See Moore*, 2009 WL 5386134, at *3. Matthews's own statement admits that the letter is a mere summation of Dr. Shah's medical records. Also, Dr. Shah's letter selectively highlights facts that tend to demonstrate a disability, but, as previously noted, the objective medical records—including Dr. Shah's—contain information that tends to contradict that conclusion.

Notwithstanding the incorrect statement by the Appeals Council, the Court has reviewed the record as a whole, including Dr. Shah's letter, and determined that the Commissioner's decision is still supported by substantial evidence. *See Higginbotham*, 163 F. App'x at 281-82; *see also Jones v. Astrue*, 228 F. App'x 403, 407 (5th Cir. 2007).

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the

magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated February _5_, 2016.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**